## TOLMAN *v.* LEATHERS.

*(Circuit Court, D. Iowa.* May, 1880.)

HOMESTEAD — MARRIED WOMAN — CONTRACT· FOR MORTGAGE BEFORE
MARRIAGE.—A contract for the loan of money upon mortgage security
will not defeat the wife's right of homestead, under the statute of Iowa,
upon the subsequent marriage of the mortgagor before the execution of
the mortgage.

In Equity.

*Brown & Campbell,* for plaintiff.

*Harvey & Lehman,* for defendant.

MILLER, A. J. Leathers, an unmarried man, residing on
and owning a quarter section of land (160 acres) in Iowa,
made application to Tolman, a citizen of Massachusetts, to
borrow of him the sum of $1,500, on the security of a mort-
gage on said land. The application was made on the tenth day
of September, A. D. 1875, and accepted by Tolman, in writ-
ing, on the 18th of the same month. Tolman prepared a
mortgage and note to be executed by Leathers, and a draft
for the money *to be· delivered* to said Leathers, as the bill
alleges, *upon the due execution of the note and mortgage.*

The bill further alleges that on the thirteenth day of October
Leathers duly executed and delivered said notes and mort-
gage, and acknowledged the latter, and received the draft for
the money.

Default being made on the conditions of the mortgage,
Tolman foreclosed it by suit in court against Leathers alone,
and bought in the land under the decree. After this he learned
that Leathers had married pending the negotiations for the
loan—that is, after his acceptance of Leathers' proposition,
and before the notes, mortgage and draft were delivered, and
before the mortgage was executed and acknowledged. Tolman
had no knowledge of the marriage when he parted with the
money, and the wife had no notice of the agreement for the
loan and mortgage at the time of the marriage. She asserts
a right of homestead in the 40 acres on which the dwelling-
house stands, and the present bill is brought for the pur-
4*

pose of foreclosing that right, or compelling her to redeem by payment of the mortgage. The case is presented to the court on demurrer to the bill, which sets out the facts in full.

The statute of Iowa, as construed by the courts of the state, are very positive in asserting the doctrine that all conveyances affecting the homestead, made during coverture, are of no validity against the wife unless she joins in them. And as Leathers was residing on the land at the time of the marriage, there can be no doubt that the wife's right of homestead attached to it at that instant, subject, only, to any paramount right then existing. Her right was a vested right the moment the marriage was consummated, and the marriage is undoubtedly a good consideration, sufficient to support it.

Counsel for plaintiff argues, however, with much force that the transaction between plaintiff and Leathers was so far a completed transaction before the marriage took place that it created an equitable mortgage in favor of the former, which is paramount to the right acquired by the wife.

It is quite clear that unless the transaction concerning the loan had reached a stage in which plaintiff had acquired a vested right in the land before the marriage took place, the right of the wife must prevail. It is probably true, also, that if such right in plaintiff had vested, his liens should prevail. What would constitute a vested right in the nature of an equitable mortgage may not be so easy to define; but I think I cannot be mistaken in saying that unless plaintiff had acquired such a right against Leathers, at or before the date of the marriage, that he could, as the transaction then stood, enforce specifically his right to have the legal mortgage executed by Leathers, or a decree for a specific lien according to the terms of their agreement, he did not have such a vested right as will defeat the homestead claim of the wife.

Let us inquire how this was. At the date of the marriage Leathers had agreed to borrow the money and give the mortgage and notes, and Tolman had agreed to loan the money when this was done. No notes and mortgages had been passed, and were not signed. The draft for the money had

been drawn but not delivered. Suppose, as things then stood, instead of the marriage, either Leathers or Tolman had refused to proceed further. If Tolman had written to his agent to return the draft, and refused to loan the money, could Leathers have had a specific performance of the contract by tendering the notes and mortgage? Specific performance here would be a decree that Tolman loan the money and accept the security. I imagine no such case of specific performance can be found.

The reason is obvious. It is a case for damages at law. Mr. Leathers could borrow the money of some one else, and recover for the trouble and expense, and difference in rate of interest, which would be full compensation for Tolman's violation of the contract to lend. It is still clearer that, if Leathers had declined to go further, Tolman could not in a court of equity compel Leathers to accept the money and execute the mortgages. If the case had gone so far that Leathers had received the money, it might be otherwise; but with his own money in his pocket I do not see how the court could compel Leathers to take it, and then compel him to make the mortgage.

The reason is the same as in the other case. Mr. Tolman could use his money otherwise, and recover from Leathers the injury suffered in losing one contract and taking the other.

It seems to me that in neither is the contract, as it then stood, one on which a court would decree a specific performance, and if so, there could be no vested right at the time in the land in Mr. Tolman. The homestead right, under the Iowa statutes, only extends to 40 acres out of the 160; that is, the quarter section of that quarter section on which the dwelling stands.

The bill makes an attempt to set up rights in plaintiff under a mortgage for $800, to another person, which was paid off by the money loaned by Tolman to Leathers. The facts on which the claim of Tolman to be subrogated to the rights of that mortgage depends are very imperfectly stated, and as I am of opinion that a case may exist in which, after applying the value of the 120 acres, not part of the homestead,

to be ascertained by a new sale or otherwise, to the extinction of the mortgage which was paramount to the wife's right of homestead, the homestead might be subjected to the remainder, if any, of that $800 and interest, the demurrer to the present bill is sustained with leave to amend in regard to this right of subrogation.

McCRARY, C. J., concurs.